FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

11 SEP 16 PM 1:31

CLERK ... COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

Richard H. Hartman II
    Plaintiff

vs.

Case No. 8:11-cv-02030-RAL-AEP

American Home Mortgage Servicing, Inc.
    Defendant
_____/

## PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

Plaintiff Richard H. Hartman files his response in opposition to the motion of Defendant American Home Mortgage Servicing, Inc. ("AMHSI") to dismiss the Complaint. For the reason's set forth below, AHMSI's Motion must be denied in its entirety.

### PRELIMINARY STATEMENT

AHMSI's Motion to Dismiss should be denied as Plaintiff's Amended Complaint contains sufficient factual information to state a valid claim upon which relief can be granted under the law, and because AHMSI's claim that it is exempted from the TCPA pursuant to Florida law is a misinterpretation not supported by either the TCPA or Florida Statutes

Importantly, AHMSI does not dispute the facts of the case, specifically, that it made numerous calls to Plaintiff's cellular telephone using an automated telephone dialing system. Nor does AHMSI dispute the fact that Plaintiff never gave it the express consent required under the Telephone Consumer Protection Act ("TCPA") to make those calls. Instead, AHMSI claims that the TCPA somehow does not apply to it, based on

Florida statutes that do not, in any way, relate to the case at bar, and it claims that because it has a business relationship with Plaintiff, that in itself somehow authorizes it to call Plaintiff's cellular telephone, despite specific language to the contrary under the appropriate section of the TCPA. AHMSI also attempts to distract this Honorable Court from the material issues in this case by implying that, because Plaintiff has fallen behind on his mortgage payments, he shouldn't be afforded the protections provided to consumers under the TCPA.

In its Motion to Dismiss, AHMSI relies on arguments that are without merit, and in some cases do not even apply to the facts and allegations pleaded in the instant lawsuit. Moreover, the limited citations it relies upon to support its arguments are either quoted out of context, are irrelevant or otherwise do not apply to the case at bar. Accordingly, its Motion to Dismiss must be denied.

## LEGAL STANDARD

In ruling on a motion to dismiss, [the] Court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *See Ashcroft v Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); *Chambers v Time Warner, Inc.*, 282 F. 3d 147, 152, (2d Cir. 2002). The complaint must allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Pinkerton v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## MEMORANDUM OF LAW

### I. AHMSI Incorrectly Claims that the TCPA Does Not Apply to Anyone Attempting to Collect a Debt in Florida.

AHMSI's argument is barred by the Supremacy Clause of the United States Constitution:

> "This Constitution, and the Laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding."

See Art. VI, § 8, cl. 3, *U.S. Constitution.*

AHMSI argues that the language of 47 U.S.C. § 227 (b)(3) prohibits a private right of action against an entity attempting to collect a debt in the state of Florida. In support of that argument, AHMSI provides the following quotation out of context: "if otherwise permitted by the laws or the rules of court of a state." (See *Defendant's Motion to Dismiss Plaintiff's Amended Complaint*, pg 5). However, it only quoted a portion of § 227 (b)(3) rather than the entire section, which significantly changes the context of the passage. Section 227 (b)(3) in its entirety states: "PRIVATE RIGHT OF ACTION - A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State..." See 47 U.S.C. § 227 (b)(3).

Contrary to AHMSI's argument, 47 U.S.C. § 227 (b)(3) does not provide for state laws to determine whether or not the TCPA applies to that state, but rather applies to jurisdictional and procedural issues only. For example, the Second District Court of Appeals for Florida has held, "The States thus have great latitude to establish the structure and jurisdiction of their own courts. It is these principles of federal law that we conclude are the subject of the "if otherwise permitted" language." *Condon v. Office*

*Depot, Inc.*, 855 So.2d 644, 647-48 (Fla.App.2003), citing: *Howlett ex rel. Howlett v. Rose*, 496 U.S. 356, 372, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990).

Furthermore, numerous State and Federal courts have interpreted 47 U.S.C. § 227 (b)(3) as pertaining to jurisdictional issues, rather than whether a state statute may prevent a party from bring a civil action under federal law. See *e.g.: Nicholson v. Hooters of Augusta, Inc.*, 136 F.3d 1287, 1289 (11th Cir.1998)(holding that 47 U.S.C. § 227 (b)(3) pertains to whether jurisdiction over TCPA claims belongs with State or Federal courts); *US Fax Law Ctr., Inc. v. iHire, Inc.*, 476 F.3d 1112, 1115 (10th Cir.2007)(to the same effect); *Gottlieb v. Carnival Corp.*, 436 F.3d 335 (2d Cir.2006)(to the same effect); *Klein v. Vision Lab Telecomm. Inc.*, 399 F.Supp.2d 528, 533 (S.D.N.Y.2005)(to the same effect); *Foxhall Realty Law Offices, Inc. v. Telecommunications Premium Services, Ltd.*, 156 F.3d 432, 434 (2d Cir.1998) (to the same effect); *Murphey v. Lanier*, 204 F.3d 911 (9th Cir.2000)(to the same effect); *ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513 (3d Cir.1998)(to the same effect); *Chair King, Inc. v. Houston Cellular Corp.*, 131 F.3d 507 (5th Cir.1997)(to the same effect); *Int'l Sci. & Tech. Inst., Inc. v. Inacom*, 106 F.3d 1146 (4th Cir.1997)(to the same effect). Accordingly, AHMSI's claim that the language contained in 47 U.S.C. § 227 (b)(3) prevents a private cause of action being brought in Florida is a misinterpretation of the statute and must fail.

## II. AHMSI Incorrectly Claims that the TCPA Does Not Apply to it Pursuant to Florida Statute 501.059.

Notwithstanding the forgoing, AHMSI claims that the TCPA does not apply to it because, according to AHMSI, Florida Statute 501.059(c) "specifically exempts the following categories of calls:

> 2. Primarily in connection with an existing debt or contract, payment or performance of which has not been completed at the time of such call;
>
> 3. To any person with whom the telephone solicitor has a prior or existing business relationship."

See *Defendant's Motion to Dismiss Plaintiff's Amended Complaint*, pg 5.

Once again, AHMSI has only quoted part of the statute, and has neglected to provide the Court with the remaining language contained therein, which changes the context of the statute. F.S. 501.059 applies to telephone solicitation, and that alone. It applies to "Telephonic sales calls", which it defines as, "a call made by a **telephone solicitor** to a consumer, **for the purpose of soliciting a sale of any consumer goods or services**... (Emphasis added). See F.S. 501.059(a).

The actual language contained in F.S. 501.059(c) is a definition of a specific type of telephone sales call, and is as follows:

> c. "Unsolicited telephonic sales call" means a **telephonic sales call** other than a call made:
> 1. In response to an express request of the person called;
> 2. Primarily in connection with an existing debt or contract, payment or performance of which has not been completed at the time of such call;
> 3. To any person with whom the telephone solicitor has a prior or existing business relationship...

See F.S. 501.059(c) 1, 2 and 3 (emphasis added).

The plain language of F.S. 501.059(c) does not exempt those types of calls from being subject to the provisions of F.S. 501.059, but rather simply states that "telephonic sales calls" made under those circumstances are not considered to be "unsolicited."

F.S. 501.059(2) and 501.059(4) each impose restrictions pertaining to "unsolicited" telephonic sales calls, which are the only exemptions that apply under F.S. 501.059(c). Furthermore, those exemptions would only apply to AHMSI if it were calling <u>for the purpose of soliciting a sale of any consumer goods or services.</u>

Importantly, Plaintiff has not alleged that AHMSI placed "unsolicited telephonic sales calls" to him, therefore AHMSI's entire defense on the grounds of any perceived exemption pursuant to F.S. 501.059(c) is without merit and should be denied. Equally important to note is that F.S. 501.059(7)(a), which specifically prohibits using an automatic telephone dialing system to make telephonic sales calls, <u>does not</u> pertain only to "unsolicited telephonic sales calls" but rather states: "**No person shall make or knowingly allow a telephonic sales call** to be made if such call involves an automated system for the selection or dialing of telephone numbers..." (emphasis added). See 501.059(7)(a) of the Florida Statutes. Thus, any perceived exemption pertaining to "unsolicited telephonic sales calls" would not apply to F.S. 501.059(7)(a). Finally, nothing contained in F.S. 501.059 applies to the case at bar as 501.059 <u>only</u> applies to telephone solicitation, and AHMSI was not calling Plaintiff for the purpose of soliciting a sale of any consumer goods or services. Accordingly, this argument presented by AHMSI is without merit and must fail.

### III. AHMSI Incorrectly Claims the TCPA Does Not Apply to Financial Institutions.

AHMSI argues that, because it is licensed as a mortgage company, it is exempted from 47 U.S.C. § 227. It claims that, because the Florida Telemarketing Act ("FTA") provides an exemption for financial institutions under Florida Statute 501.604(7), financial institutions are thereby also exempt from the restrictions contained in the TCPA. This argument is without merit and should be denied.

The language of the FTA specifically states that it applies to "unsolicited sales calls" related to "commercial telephone solicitation" when the call is made for the purpose of "inducing the person called to purchase or invest in consumer goods or services." (See 10A *Fla Jur Consumer and Borrower Protection* § 89 & 90). The language in the statute is quite specific.

The primary purpose of the FTA is to protect consumers by requiring "commercial telephone sellers" (see *id.* at § 90) to be licensed. This is the exemption that applies to financial institutions under 501.604 F.S. The exemption does not entitle financial institutions to violate other state and federal statutes, regardless of any vague similarities regarding the intent of the statutes.

While there is a slight similarity between the TCPA and the FTA in that both Acts were created to protect consumers from commercial entities that call them on the telephone, this is where the similarity ends. While the FTA regulates the licensing of commercial telephone solicitors, the TCPA pertains to the equipment commercial callers use to contact consumers. Indeed, the title of 47 U.S.C. § 227 is <u>Restrictions on use of telephone equipment.</u>

It is also important to note that the language in the FTA is specific in that the Act only governs commercial callers who call for the purpose of <u>selling goods or services</u>, whereas the language in the TCPA is specific in that it governs all callers, regardless of the reason for the call. The exact language to this effect is in the 2007 Declaratory Ruling by the Federal Communications Commission, which states in relevant part:

> "We also reiterate that the plain language of section 227(b)(1)(A)(iii) prohibits the use of auto-dialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party. We note that this prohibition applies regardless of the content of the call, and is not limited only to calls that constitute "telephone solicitations."

See *Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C.R. 559, ¶ 11 (F.C.C. 2007).

Contrary to AHMSI's argument, the instant case is not due to AHMSI making "unsolicited sales calls", despite AHMSI trying to convince the Court otherwise. Rather, the lawsuit is due to AHMSI using an automated telephone dialing system to call Plaintiff on his cellular phone, without having been given express consent as required under the TCPA, an issue that is not discussed in any way whatsoever under the FTA. This issue is, however, discussed in great detail in 47 U.S.C. § 227. Based on the forgoing, AHMSI's argument is without merit and should be denied.

IV. **AHMSI Incorrectly Claims it was Entitled to Call Plaintiff's Cellular Telephone Due to an Established Business Relationship it Had With Plaintiff.**

AHMSI argues that because it had an "established business relationship" with Plaintiff at the time it used an automatic telephone dialing system to call Plaintiff's cellular telephone, that "relationship" exempts it from the provisions of the TCPA. AHMSI claims that the exemption is pursuant to 47 U.S.C. § 227(b)(1)(B), and cites

*Meadows v. Franklin Collection Serv., Inc.*, 414 Fed. Appx. 230, 235 (11th Cir. 2011) and *Sardinas v. Geithner*, 2010 WL 2696626, *3 (D. Nev. 2010) to support its argument. That argument is fatally flawed for the reasons that follow.

Plaintiff's complaint alleges AHMSI violated the TCPA by using an auto-dialer to call his cellular telephone, which is prohibited under 47 U.S.C. § 227(b)(1)(A)(iii). The statute AHMSI cited in its Motion to Dismiss, § 227 (b)(1)(B) pertains only to residential telephone lines, not cellular telephones. Moreover, the cases AHMSI cited also pertain to calls made to a residential telephone. In its Motion, AHMSI acknowledges that § 227(b)(1)(B) addresses calls made to residential telephone lines, but attempts to convince the Court that, because of a similar phrase contained in both sections, that section also applies to cellular telephones. This argument is without merit and must be denied.

Numerous courts have ruled on whether or not the "established business relationship" exclusion under 47 U.S.C. § 227(b)(1)(B) applies to auto-dialed telephone calls made to a cellular telephone and all have determined that it does not. See e.g.: *Bentley v. Bank of America, N.A., et al*, 773 F. Supp. 2d 1367 (S.D. Fla. 2011)(determining that section 227(b)(1)(B) applies to residential telephone lines, but not cellular telephones); *Stuart v. AR Resources, Inc.*, (Dist. Court, ED Pennsylvania 2011)(to the same effect); *Bates v. I.C. Systems, Inc.*, 2009 WL 3459740, (Dist Court, W.D.N.Y. 2009)(to the same effect).

In the most recent ruling, *Bentley v. Bank of America, N.A.*, AHMSI argues that Court ruled the way it did because the Defendant did not cite any authority to support its position. (See *Defendant's Motion to Dismiss Plaintiff's Amended Complaint*, pg 7, footnote). Plaintiff submits that the reason the Defendant did not cite any authority to

support its position is that there are none to cite. On the contrary, all authorities show that section 227(b)(1)(B) applies only to residential telephone lines and not cellular telephones.

AHMSI goes on to argue that the Federal Communications Commission, in its 2007 Declaratory Ruling, exempts debt collectors from the provisions of section 227(b)(1)(A)(iii). In support of that argument, AHMSI included the following quote from that Ruling in its Motion:

> "Because we find that autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the "prior express consent" of the called party, we clarify that such calls are permissible. We conclude that the provision of a cell phone number to a creditor, *e.g.*, as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt."

See *Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C.R. 559, ¶ 9 (F.C.C. 2007).

In quoting the above passage, however, AHMSI failed to include the next paragraph in the Declaratory Ruling, which states:

> We emphasize that prior express consent is deemed to be granted **only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed.** To ensure that creditors and debt collectors call only those consumers who have consented to receive autodialed and prerecorded message calls, **we conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent.** The creditors are in the best position to have records kept in the usual course of business showing such consent, such as purchase agreements, sales slips, and credit applications. **Should a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent.** (Emphasis added).

See *Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C.R. 559, ¶ 10 (F.C.C. 2007).

As pleaded in his Complaint, Plaintiff has never given AHMSI consent to call his cellular telephone, and did not provide the cellular telephone number to AHMSI as part of any credit application or other transactional documentation. In it's Motion, AHMSI does not allege that Plaintiff provided the telephone number to it at during the transaction that resulted in the debt owed, or even that Plaintiff provided the telephone number to it at all. AHMSI merely states, "Plaintiff claims to have a business relationship with AHMSI in connection with a residential mortgage. As a result of this business relationship, Plaintiff gave his prior express consent to be called." (See *Defendant's Motion to Dismiss Plaintiff's Amended Complaint*, pg 7). Such an unsubstantiated statement does not meet the burden of proof standard required by the Declaratory Ruling of the F.C.C.

Regardless of whether or not AHMSI will, at a later date, be able to substantiate its assertion that it was given consent to call Plaintiff's cellular telephone, the instant motion is a Motion to Dismiss, and in ruling on a motion to dismiss, this Court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

Indeed, this Honorable Court recently denied a Motion to Dismiss in a TCPA case that contains similarities to the instant case. In *Kahn v. Portfolio Recovery Associates, LLC.*, Case 8:10-cv-2399-RAL-TGW, prerecorded telephone calls were made to the Plaintiff's residential telephone. The Defendant moved the Court for an order of

dismissal, claiming that it was exempted from the TCPA, under 47 U.S.C. § 227(b)(1)(B), as a debt collector and also due to an established business relationship. In that case, the relevant statute, section 227(b)(1)(B), does specifically provide an exemption for an established business relationship for calls to a residential telephone, unlike the case at bar, however, this Honorable Court ruled that the Plaintiff's allegations were, for the purposes of a motion to dismiss, "sufficient to raise a right of relief above the speculative level and to state a plausible claim for relief against Defendant for violating the TCPA", and therefore denied the Defendant's Motion. (See Case No.: 8:10-cv-02399-RAL-TGW, Dkt 38).

By contrast, in the case at bar, the plain language of the 2007 FCC Declaratory Ruling, the specific language contained in 47 U.S.C. § 227(b)(1)(A)(iii) and relevant case law, both in this district as well as other districts, show that there was no exemption permitting AHMSI to call Plaintiff's cellular telephone with an automatic telephone dialing system, and accordingly, Plaintiff respectfully submits that the Motion to Dismiss in the instant case must also be denied.

V. **Plaintiff Provided Written Notice to AHMSI That it Did Not Have Consent to Call His Cellular Telephone.**

As stated in his Complaint, Plaintiff provided written notice to AHMSI on October 5, 2011, informing it that it did not have consent to call him on his cellular telephone, in response to two telephone calls he received from AHMSI the prior day. Regardless of AHMSI's arguments contained in its Motion to Dismiss, and any exemptions it may claim to have had, once Plaintiff notified it that it did not have consent to call him, each subsequent telephone call, as specified in ¶¶ 17-165 of his Complaint, are actionable under the TCPA. See *e.g.: Gutierrez v. Barclays Group*, US Dist. Ct., S.D.

Calif., 2011, Case No., 3:10-cv-01012-DMS-BGS (ruling that any calls after revocation of consent are actionable under the TCPA); *Sengenberger v. Credit Control Services, Inc..*, U.S. Dist. Court, ND Illinois 2010(to the same effect).

## CONCLUSION

Defendant American Home Mortgage Servicing, Inc. is subject to the Telephone Consumer Protection Act, despite its claims to the contrary. The language AHMSI claims links liability under the TCPA with Florida Telemarketing and Telephone Solicitor Statutes merely pertains to whether TCPA claims should be heard in State or Federal Courts, and does not invalidate the Supremacy Clause of the United States Constitution.

Additionally, while 501.059(c) of the Florida Statutes permits certain "telephone solicitors" to make telephone calls to certain consumers <u>for the purpose of soliciting a sale of any consumer goods or services</u>, and that purpose only, contrary to AHMSI's argument, that has no bearing on the instant lawsuit. Furthermore, while the Florida Telemarketing Act exempts AHMSI from needing a telemarketing license to make telephone sales calls, that is also immaterial to the case at bar. That exemption does not provide AHMSI a blanket exemption from other state and federal consumer protection laws. Indeed, if AHMSI's argument were valid, it would mean that every other TCPA claim ever filed against a creditor in a state or federal court in Florida was without a cause of action. This argument by AHMSI is nothing more than a red herring in a futile attempt to distract the Court from the facts and the applicable law with regards to the instant lawsuit.

Plaintiff never gave AHMSI consent to call him on his cellular telephone, express or otherwise. AHMSI has not asserted that Plaintiff ever gave it express consent, but rather that it was somehow entitled to call Plaintiff merely because it had done business with Plaintiff in the past. The unambiguous language in 47 U.S.C. § 227(b)(1)(A)(iii), as well as relevant case law directly contradicts AHMSI's position, thus, this argument also must fail.

Finally, Plaintiff provided written notice to AHMSI on 10/5/2010, informing it that it did not have consent to contact him on his cellular telephone, making all subsequent calls actionable under the TCPA.

WHEREFORE, as Plaintiff Richard H. Hartman's Amended Complaint contains sufficient factual information to state a valid claim upon which relief can be granted under the law, he respectfully requests that this Honorable Court deny Defendant's Motion to Dismiss in its entirety.

Respectfully submitted September 16, 2011.

Richard H. Hartman II, Plaintiff
12528 Shadow Ridge Blvd
Hudson, FL 34669
813-486-8287
rick@rickhartman.com

### CERTIFICATE OF SERVICE

UNDER PENALTY OF PERJURY, I hereby certify that on September 16, 2011, I furnished a copy of the forgoing Amended Complaint to Blank Rome LLP, attorneys for American Home Mortgage Servicing, Inc., via U.S. Mail, at 1200 North Federal Highway, Suite 312, Boca Raton, FL 33432

Richard H. Hartman