# Plaintiff's Exhibit

# "A"

Loan Number:   861003163

Servicing Number:   002202289-1

Date:   07/31/06

## ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

Plaintiff's Exhibit ___A___

12528   SHADOW RIDGE BLVD,   HUDSON, FL 34669-2789
[Property Address]

**1.   BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. is called "principal"), plus interest, to the order of the Lender. The Lender is   $124,400.00   (this amount

Option One Mortgage Corporation, a California Corporation

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. Interest will be calculated on the basis of a 12-month year and a 30-day month. I will pay interest at a yearly rate of   8.250%   . The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.   PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on   September 01   ,   2006   . I will make these payments every month, in addition to a final Balloon Payment payable at Maturity as referenced in the attached Balloon Note Addendum, until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on,   August 01   ,   2036   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   Option One Mortgage Corporation
P.O. BOX 92103 LOS ANGELES, CA 90009-2103
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S.   $888.39   . This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**(D) Application of Payments**

Payments received by the Note Holder will be applied in the following order: (i) prepayment charges due under this Note; (ii) amounts payable under paragraph 2 of the Security Instrument (defined below); (iii) interest due under this Note; (iv) principal due under this Note; and (v) late charges due under this Note.

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of   August 01   and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."   2008

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

Page 1 of 3   OA ADJUSTABLE RATE BALLOON NOTE-LIBOR INDEX - Single Family

CERTIFIED TO BE A TRUE AND CORRECT COPY OF THE ORIGINAL

FLNT051.wp (05-19-05)

Loan Number:   861003163

Servicing Number:    002202289-1 

Date:   07/31/06

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding FIVE AND 85/100 percentage point(s) ( 5.850% ) to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than   11.250%   or less than 8.250% . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than   14.250%   or less than   8.250%

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due, together with accrued interest. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

If within   24 Months   from the date of execution of the Security Instrument I make a full prepayment or, in certain cases a partial prepayment, I will at the same time pay to the Note Holder a prepayment charge. The prepayment charge will be equal to six (6) months advance interest on the amount of any prepayment that, when added to all other amounts prepaid during the twelve (12) month period immediately preceding the date of the prepayment, exceeds twenty percent (20%) of the original principal amount of this Note. In no event will such a charge be made unless it is authorized by state or federal law.

**6.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of   15   calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   6.000%   of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all interest that I owe on that amount, together with any other charges that I owe under this Note or the Security Instrument, except as otherwise required by applicable law.

**(C) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(D) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law, whether or not a lawsuit is filed. Those expenses include, for example, reasonable attorneys' fees.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

of 3

FLNT051.wp (05-19-05)

Loan Number: 861003163  Servicing Number: 002202289-1  Date: 07/31/06

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**12. DOCUMENTARY TAX**

The state documentary tax due on this Note has been paid on the Mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)
RICHARD H HARTMAN II                -Borrower

_____(Seal)
                                    -Borrower

_____(Seal)
                                    -Borrower

_____(Seal)
                                    -Borrower

_____(Seal)
                                    -Borrower

_____(Seal)
                                    -Borrower

[Sign Original Only]

Page 3 of 3

FLNT051.wp (05-19-05)

Loan Number:  861003163

Servicing Number:  002202289-1

Date:  07/31/06

# BALLOON NOTE ADDENDUM

This is a BALLOON LOAN. The term of the loan is 40/30 years. This means that while your monthly payment amount is amortized in accordance with a 40 year loan term, the loan is payable in full in THIRTY (30) years from the date the loan is made. As a result, you will be required to repay the entire remaining principal balance, together with accrued interest, late charges, if any, and all advancements made by the lender under the terms of this loan in THIRTY (30) years from the date on which the loan is made.

The lender has no obligation to refinance this loan at the end of its term. Therefore, you may be required to repay the loan out of other assets you may own, or you may have to find another lender willing to refinance the loan.

Assuming this lender or another lender refinances this loan at maturity, you will probably be charged interest at market rates prevailing at that time which may be considerably higher or lower than the interest rate paid on this loan. You may also have to pay some or all of the closing costs normally associated with the new mortgage loan even if you obtain refinancing from the same lender.

Borrower  RICHARD H HARTMAN II

Borrower

Borrower

Borrower

Borrower

Borrower

MULTISTATE BALLOON NOTE ADDENDUM
Page 1 of 1

USD5641.wp (05-19-05)

CERTIFIED TO BE A TRUE AND
CORRECT COPY OF THE ORIGINAL

# Plaintiff's Exhibit

# "B"

14
2

WHEN RECORDED MAIL TO: *R~*   **Southeast Title Insurance**
2190 Mariner Blvd.
Spring Hill, FL 34609



Prepared by:

*0606047*

OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57096
IRVINE, CA 92619-7096
ATTN: RECORDS MANAGEMENT

Loan Number: 861003163
Servicing Number: 002202289-1

2006157749

Rcpt:1021055   Rec: 120.50
DS: 435.40      IT: 248.80
08/03/06        Dpty Clerk

JED PITTMAN, PASCO COUNTY CLERK
08/03/06 08:56am   1   of   14
OR BK   **7116**   PG   **365**

_____[Space Above This Line For Recording Data]_____

# MORTGAGE                                    Plaintiff's Exhibit  **B**

THIS MORTGAGE ("Security Instrument") is given on July 31, 2006        .The mortgagor is
RICHARD H HARTMAN II, A SINGLE MAN

whose address is 12528 SHADOW RIDGE BLVD , HUDSON, FL 34669-2789

This Security Instrument is given to                                        ("Borrower").
Option One Mortgage Corporation, a California Corporation
which is organized and existing under the laws of CALIFORNIA
3 Ada, Irvine, CA 92618                                      , and whose address is
Borrower owes Lender the principal sum of ONE HUNDRED TWENTY FOUR THOUSAND FOUR HUNDRED   ("Lender").
.    .AND NO/100THS      Dollars (U.S.$124,400.00                    ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debt, if not paid earlier, due and payable on August 01, 2036        .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and
all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced
under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's
covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby
mortgage, grant and convey to Lender the following described property located in Pasco
County, Florida:
04-25-17-005C-00000-0400
Lot 40, SHADOW LAKES, according to the plat thereof as recorded in Plat Book 19,
pages 26-27, public records of Pasco County, Florida.

which has the address of 12528   SHADOW RIDGE BLVD, HUDSON

Florida          34669-2789        ("Property Address");                    [Street, City],
                 [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the
right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances
of record. Borrower warrants and will defend generally the title to the Property against all claims and demands,
subject to any encumbrances of record.

**FLORIDA**-Single Family
Page 1 of 8

FLDI0011 (05/10/00)

Loan Number: 861003163

Servicing Number: 002202289-1

Date:07/31/06

COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not Charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

Page 2 of 8

FLD10012 (05/10/00)

Loan Number: 861003163

Servicing Number: 002202289-1

Date: 07/31/06

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, or applicable Law otherwise requires, insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Lender's option, in such order and proportion as Lender may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, Lender may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

If Borrower obtains earthquake insurance, any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Lender, then such insurance shall (i) name Lender as loss payee thereunder, and (ii) be subject to the provisions of this paragraph 5.

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained in the Note unless the property is to be occupied by Borrower as Borrower's primary/secondary residence. Lender makes non-owner residence loans of different terms. Borrower promises and assures Lender that Borrower intends to occupy this property as Borrower's primary/secondary residence and that Borrower will so occupy this property as its sole primary/secondary residence within sixty (60) days after the date of the Security Instrument. If Borrower breaches this promise to occupy the property as Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instrument; (1) Declare all sums secured by the Security Instrument due and payable and foreclose the Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Page 3 of 8

FLD10013 (05/10/00)

OR BK **7116** PG **368**
4   of 14

Loan Number: 861003163

Servicing Number: 002202289-1

Date: 07/31/06

Borrower shall, at Borrower's own expense, appear in and defend any action or proceeding purporting to affect the Property or any portion thereof or Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights or powers of Lender with respect to this Security Instrument or the Property. All causes of action of Borrower, whether accrued before or after the date of this Security Instrument, for damage or injury to the Property or any part thereof, or in connection with any transaction financed in whole or in part by the proceeds of the Note or any other note secured by this Security Instrument, by Lender, or in connection with or affecting the Property or any part thereof, including causes of action arising in tort or contract and causes of action for fraud or concealment of a material fact, are, at Lender's option, assigned to Lender, and the proceeds thereof shall be paid directly to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may apply such proceeds to the sums secured by this Security Instrument or to any deficiency under this Security Instrument or may release any monies so received by it or any part thereof, as Lender may elect. Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement thereof. Borrower agrees to execute such further assignments and any other instruments as from time to time may be necessary to effectuate the foregoing provisions and as Lender shall request.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate in effect from time to time and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Lender may apply, use or release the condemnation proceeds in the same manner as provided in paragraph 5 hereof with respect to insurance proceeds.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to

FLD10014 (05/10/00)

Loan Number: 861003163

Servicing Number: 002202289-1

Date: 07/31/06

extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender.  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

Page 5 of 8

Loan Number: 861003163

Servicing Number: 002202289-1

Date: 07/31/06

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law. The holder of the Note and this Security Instrument shall be deemed to be the Lender hereunder.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

Borrower shall be solely responsible for, shall indemnify, defend and hold harmless Lender, its directors, officers, employees, attorneys, agents, and their respective successors and assigns, from and against any and all claims, demands, causes of action, loss, damage, cost (including actual attorneys' fees and court costs and costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, abatement, containment, remedial or other required plan), expenses and liability directly or indirectly arising out of or attributable to (a) the use, generation, storage, release, threatened release, discharge, disposal, abatement or presence of Hazardous Substances on, under or about the Property, (b) the transport to or from the Property of any Hazardous Substances, (c) the violation of any Hazardous Substances law, and (d) any Hazardous Substances claims.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

ADDITIONAL COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** If any installment under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other mortgage or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance. In such event, Lender, at its option, and subject to applicable law, may then or thereafter invoke the power of sale and/or any other remedies or take any other actions permitted by applicable law. Lender will collect all expenses incurred in pursuing the remedies described in this Paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for releasing the Property for services rendered if the charging of the fee is permitted under applicable law.

**23. Attorneys' Fees.** As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.

**24. Misrepresentation and Nondisclosure.** Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable.

**25. Time is of the Essence.** Time is of the essence in the performance of each provision of this Security Instrument.

Page 6 of 8

FLD10016 (05/10/00)

Loan Number: 861003163

Servicing Number: 002202289-1

Date: 07/31/06

**26. Waiver of Statute of Limitations.** The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by applicable law.

**27. Modification.** This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**28. Reimbursement.** To the extent permitted by applicable law, Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder or in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with

this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Trustee and Lender their fees in connection with Trustee and Lender including, but not limited to assumption application fees; fees for payoff demands and, statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien releases and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.

Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Lender their fees in connection with Lender providing documents or services arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument.

**29. Clerical Error.** In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with this Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to reexecute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

**30. Lost, Stolen, Destroyed or Mutilated Security Instrument and Other Documents.** In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan document, and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

**31. Assignment of Rents.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security Instrument and Borrower has not abandoned the Property.

**32. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)]

[X] Adjustable Rate Rider

[ ] Manufactured Home Rider          [ ] Condominium Rider

[X] Other(s) (specify) Balloon Rider   [X] Planned Unit Development Rider          [ ] 1-4 Family Rider

                                                                        [ ] Occupancy Rider

Page 7 of 8

FLD10017 (05/10/00)

Loan Number: 861003163          Servicing Number: 002202289-1          Date: 07/31/06

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.
Signed, sealed and delivered in the presence of:

*Donna Bennett*
Donna Bennett          Witness          _____ (Seal)
                                                                        -Borrower

*Shirley M. Auvil*
SHIRLEY M. Auvil          Witness          _____ (Seal)
                                                                        -Borrower

*Richard H Hartman II*
RICHARD H HARTMAN II          (Seal)          _____ (Seal)
                                          -Borrower                    -Borrower

_____ (Seal)          _____ (Seal)
                      -Borrower                                -Borrower

STATE OF FLORIDA, County ss: *Hernando*
    The foregoing instrument was acknowledged before me this _____ 7-31-06 _____ by

*Richard H. Hartman, II* _____

who is personally known to me or who has produced *his fl...* _____ as identification.

*Shirley M. Auvil*
Notary Public

NOTARY PUBLIC-STATE OF FLORIDA
    **Shirley M. Auvil**
    Commission # DD362758
    Expires: NOV. 26, 2008
Bonded Thru Atlantic Bonding Co., Inc.

FLD10018 (05/10/00)

# Plaintiff's Exhibit

# "C"

# State of California
## Secretary of State

CERTIFICATE OF STATUS

ENTITY NAME:

OPTION ONE MORTGAGE CORP.

FILE NUMBER:        C1562192
FORMATION DATE:     07/19/1989
TYPE:               DOMESTIC CORPORATION
JURISDICTION:       CALIFORNIA
STATUS:             SUSPENDED

I, DEBRA BOWEN, Secretary of State of the State of California, hereby certify:

The records of this office indicate the California Franchise Tax Board suspended the entity's powers, rights and privileges on November 01, 1991, pursuant to the provisions of the California Revenue and Taxation Code, and the entity's powers, rights and privileges remain suspended.



IN WITNESS WHEREOF, I execute this certificate and affix the Great Seal of the State of California this day of August 31, 2011.

**DEBRA BOWEN**
**Secretary of State**

*NP-25 (REV 1/2007)*

OSP 06 99731   EMS

# Plaintiff's Exhibit

# "D"

# Delaware

PAGE   1

### The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY "OPTION ONE MORTGAGE CAPITAL CORPORATION" IS DULY INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL CORPORATE EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE SHOW, AS OF THE THIRTIETH DAY OF NOVEMBER, A.D. 2006.

AND I DO HEREBY FURTHER CERTIFY THAT THE SAID "OPTION ONE MORTGAGE CAPITAL CORPORATION" WAS INCORPORATED ON THE EIGHTH DAY OF AUGUST, A.D. 2006.

AND I DO HEREBY FURTHER CERTIFY THAT THE FRANCHISE TAXES HAVE NOT BEEN ASSESSED TO DATE.



4199439   8300

061092772

Harriet Smith Windsor, Secretary of State

AUTHENTICATION: 5235549

DATE: 11-30-06

# Plaintiff's Exhibit

# "E"

393551.1

**FILED**

in the office of the Secretary of State
of the State of California

**NOV 3 0 2006**

## STATEMENT AND DESIGNATION
## BY FOREIGN CORPORATION

OPTION ONE MORTGAGE CAPITAL CORPORATION
(Name of Corporation)

a corporation organized and existing under the laws of _____Delaware_____, makes the following statements and designation:     (State or Place of incorporation
)

1.   The address of its principal executive office is _____3 Ada, Irvine, CA 92618_____

2.   The address of its principal office in the State of California is _____3 Ada, Irvine, CA 92618_____

### DESIGNATION OF AGENT FOR SERVICE OF PROCESS IN THE STATE OF CALIFORNIA
(Complete Either Item 3 or Item 4)

3.   (Use this paragraph if the process **agent is a natural person.**)

_____, a natural person residing in the State of

California, whose complete address is _____

_____, is designated as agent upon whom process directed to this corporation may be served within the State of California, in the manner provided by law.

4.   (Use this paragraph if the process **agent is a corporation.**)

_____C T Corporation System_____, a corporation organized and existing

under the laws of _____Delaware_____, is designated as agent upon whom process directed to this corporation may be served within the State of California, in the manner provided by law.

**NOTE:   Corporate agents must have complied with California Corporations Code Section 1505 prior to designation.**

5.   It irrevocably consents to service of process directed to it upon the agent designated above, and to service of process on the Secretary of State of the State of California if the agent so designated or the agent's successor is no longer authorized to act or cannot be found at the address given.

_William S. Smith_
(Signature of Corporate Officer)

WILLIAM S. SMITH
SENIOR VICE PRESIDENT & GENERAL COUNSEL
(Typed Name and Title of Officer Signing)

Secretary of State Form
S&DC-STOCK/NONPROFIT (REV 03/2005)

41027299.1

# Plaintiff's Exhibit

# "F"

# FLORIDA DEPARTMENT OF STATE
# DIVISION OF CORPORATIONS

| Home | Contact Us | E-Filing Services | Document Searches | Forms | Help |
|------|-----------|-------------------|-------------------|-------|------|

**Previous List**   **Next List**

**Entity Name Search**

Submit

## Entity Name List

| Corporate Name | Document Number | Status |
|----------------|-----------------|--------|
| OPTION ONE MORTGAGE CORPORATION | F93000003480 | NAME HS |
| OPTION ONE MORTGAGE CORPORATION (INDIA) PRIVATE LIMITED | F08000001861 | NAME HS |
| OPTION ONE MORTGAGE SERVICES, INC. | F97000002121 | INACT |
| OPTION ONE OUTSOURCING, INC. | P11000024942 | ACT |
| OPTIONONE PRESERVATION TECHNOLOGIES AND ENTERPRISES, LLC | L05000011447 | NAME HS |
| OPTION ONE PRODUCE INC | P06000140329 | INACT |
| OPTION ONE PROPERTY SOLUTIONS & INVESTMENTS LLC | L07000106079 | INACT |
| OPTION ONE REAL ESTATE, INC. | L59450 | ACT |
| OPTION ONE REALTY INC | P99000061672 | ACT |
| OPTION ONE REALTY GROUP CORP | P06000092386 | ACT |
| OPTION ONE REALTY SERVICES, INC. | P02000064171 | ACT |
| OPTION ONE SALES INC. | P08000013431 | INACT |
| OPTION ONE SERVICES, INC. | P09000084582 | ACT |
| OPTION ONE SERVICES LLC | L07000047433 | INACT |
| OPTION ONE SOLUTIONS, LLC | L06000017434 | ACT |
| OPTION ONE STAFFING SERVICES, CORP | P10000049065 | ACT |
| OPTION ONE TITLE, INC. | P02000104431 | INACT |
| OPTION ONE TITLE AGENCY, LLC | L07000127073 | INACT/UA |
| OPTION ONE TOURS & CRUISES, INC. | P00000070844 | INACT |
| OPTION ONE TOURS AND CRUISES, INC. | P01000119746 | INACT |
| OPTION ORTHOMED LLC | L09000100258 | NAME HS |
| OPTION PARTNERS I LTD | A04048 | INACT |
| OPTION PARTNERS II LTD | A04075 | INACT |
| OPTION PARTNERS IV LTD | A04380 | INACT |

**Previous List**   **Next List**

**Entity Name Search**

Submit

| Home | Contact us | Document Searches | E-Filing Services | Forms | Help |

Copyright © and Privacy Policies
State of Florida, Department of State

# Plaintiff's Exhibit

# "G"

October 5, 2010

Richard H. Hartman II
12528 Shadow Ridge Blvd
Hudson, FL 34669


American Home Mortgage Servicing, Inc.
1525 S. Belt Line Road
Coppell, TX 75019

Dear AHMSI,

This letter is in response to a telephone call I received from one of your representatives today.

The telephone number, which your representative called, 813-486-8287, is assigned to my cellular phone. I have never given consent for AHMSI to call me on my cellular phone and I hereby demand you stop calling that number immediately.

In the event you feel that you have somehow received prior consent to call me at that number, ANY PRIOR CONSENT TO CALL ME ON MY CELLULAR PHONE IS HEREBY REVOKED.

Any further calls to me at that number may result in my taking legal action to protect my rights.


Sincerely,

Richard H. Hartman II

Plaintiff's Exhibit

"H"

## TRANSCRIPT OF 6/24/2011 TELEPHONE CALL BETWEEN
## AHMSI AND RICHARD H. HARTMAN

Hartman:       Okay, are you there?

AHMSI:         Uh, yes sir.

Hartman:       Okay.

AHMSI:         And, uh, we're a debt collector and I'm also required to monitor and
               record every single of our calls.

Hartman:       That's fine, I'm recording this call also.

AHMSI:         Thank you sir. And I need to inform you as well that on the account, we
               have an estimated reinstatement amount for $13,000, which is good
               through the end of the day, and an estimated sale date which is estimated
               for September 9, 2011. Are your intentions to keep your property, Mr.
               Hartman?

Hartman:       Okay, I have told you all many times before, and I'm telling you this time
               when it's recorded, you do not have consent to call me on this phone using
               an auto-dialer, you have been doing it for a very long time, I have all of it
               on tape, I also have the recording on tape saying that you do not have
               consent to do it, and if you do it again, I'm going to sue you under the
               TCPA. Do you have any questions about that?

AHMSI:         Uh, I, I uh, I do have a question about that Mr. Hartman, did you send that
               written request to the resolution department to let them know that you do
               not want any calls to be… uh… sir?

Hartman:       I have sent it in writing, and I also have it recorded now as well.

AHMSI:         All right, thank you sir. And sir, do you have any questions towards the
               account sir?

Hartman:       Not at all.

AHMSI:         Ok, uh, I will be notating this on the account and we'll go ahead and try to
               escalate this as well sir. Thank you for receiving this call from American
               Home Mortgage Servicing, Mr. Hartman, and have an excellent day sir.

Hartman:       You too. Bye.

(The call was ended at that point).

# Plaintiff's Exhibit

# "I"

## TRANSCRIPT OF 7/5/2011 TELEPHONE BETWEEN
## AHMSI AND RICHARD H. HARTMAN

| | |
|---|---|
| Hartman: | Hello |
| AHMSI: | Hello |
| Hartman: | Hello, Can I help you? |
| AHMSI: | May I speak with Richard? |
| Hartman: | Who's calling please? |
| AHMSI: | May I speak with Richard Hartman? |
| Hartman: | This is Richard. |
| AHMSI: | This is Richard Hartman that I am speaking with, right? |
| Hartman: | Yes it is. |
| AHMSI: | Mr. Hartman, my name is [unintelligible] and I am calling from American Home Mortgage Servicing. |
| Hartman: | How come when you called me, I had a recording at first that said, "please hold for an important call?" I almost hung up. |
| AHMSI: | Hello? |
| Hartman: | Yes. |
| AHMSI: | Ok, Mr. Hartman, before I proceed any further, let me tell you that American Home Mortgage Servicing is a debt collector and may record or monitor calls. Before we proceed any further… |
| Hartman: | Wait. I'm sorry, this call is breaking up, did you say this call may be recorded? |
| AHMSI: | What I said, American Home Mortgage servicing is a debt collector and may record or monitor calls. |
| Hartman: | All right. I'm going to record this phone call too. What can I do for you? |
| AHMSI: | I'm sorry sir? |
| Hartman: | I'm going to record this phone call as well. Now what can I do for you? |

AHMSI:      Um.. Ok.  Mr. Hartman, would you please verify your alternate phone number?

Hartman:    Um, this is the only phone number that I have.  However, I have told you numerous times not to call me on this phone number because it is my cell phone.

AHMSI:      So do you have any other phone number that we can call you on?

Hartman:    No I do not.

AHMSI:      [Said something unintelligible].

Hartman:    I'm sorry?

AHMSI:      Do you want me to keep this number as it is or do you want me to remove this number?

Hartman:    I want you to remove that number.  I have told you all that numerous times…

            (There is a pause)

Hartman:    Now when you called me, before you came on the phone, as soon as I answered the phone, there was a recording that said, "please hold for an important phone call."  And then there was a pause, I said "hello, hello" and nobody answered, and I almost hung up, and then you finally came on the line.  What was the deal with that?

AHMSI:      [Unintelligible] that information sir, and you say that you do not want to be called on the number that we have called you on today, correct?

Hartman:    That's correct.

(After this point, I stopped recording the call).

# Plaintiff's Exhibit

# "J"

## TRANSCRIPT OF 7/12/2011 TELEPHONE CALL
## BETWEEN AHMSI AND RICHARD H. HARTMAN

AHMSI:      Ok, may I speak with Mr. Richard Hartman?

Hartman:    Speaking.

AHMSI:      Ok, so I am speaking with Mr. Richard Hartman, correct?

Hartman:    Correct.

AHMSI:      All right.  Hi Mr. Hartman, my name is (unintelligible) and I am calling from American Home Mortgage Servicing.  Let me inform you, we are debt collectors and may record or monitor calls.  Please verify any alternate numbers you have.

Hartman:    I am going to record this call also.

AHMSI:      Sorry?

Hartman:    I am going to record this telephone call also.

AHMSI:      All right.

Hartman:    And I do not have an alternate telephone number.

AHMSI:      Ok, thank you.  I do see the estimated reinstatement amount, as of today is, um, $14,000, so what are your intentions for the property?

Hartman:    I have a...  I have a question for you.  When you first called me...  When you first called me...  Actually, today is... hang on one second.  Today is...  What's the date today?

AHMSI:      Today is the 12th.

Hartman:    July 12th?

AHMSI:      Yes.

Hartman:    Ok, thanks

Hartman:    When you first called me, I answered the phone, and I kept saying hello, and nobody was there and then finally you came on the line.  How come?  Why weren't you there when I answered the phone?

AHMSI:      Ok, what happens is that it wasn't actually me that dialed the call. We have a dialer. It is an automated system, all right, who dials the call. Then after dialing the call, all right, the call gets transferred to a live agent.

Hartman:    Ok, so you didn't call me, I was called by an automatic dialer.

AHMSI:      That's right.

Hartman:    Ok.

AHMSI:      And then once the call [gets connected], we answer the call.

Hartman:    Ok. And do you see noted on my account where I have informed you that you do not have consent to call me on my cell phone? Do you see that noted on my account?

AHMSI:      Um... (long pause) Just give me a few minutes and let me check this for you.

Hartman:    That's fine.

AHMSI:      Can I place the call on hold? Would you mind, Mr. Hartman?

Hartman:    Sure.

AHMSI:      Thank you.

            (110 seconds of "hold music")

AHMSI:      All right, thanks for holding Mr. Hartman.

Hartman:    Yes.

AHMSI:      All right, first of all, thank you for letting me know you are going to record this call, all right, and the second thing is you told me that you had requested that we shouldn't call you at your cell phone. Um... Um. Yes, I do see where you have stated that you do not want to receive any calls, all right, but we do not have any particular request that you do not want any calls at your cell phone.

Hartman:    Correct, you just said that you see noted on my account that I don't want calls on my cell phone, that you don't have consent, right?

AHMSI:      Well, it's not on your cell phone sir, its just that I mentioned that you do not want us to call you.

Hartman:    Well, again, last time I said… Last time that I spoke to you all, actually, many times that I've spoke to you all, I have said that you do not have consent to call me at this number, which is my cell phone.  And you see that noted on my account, right?

AHMSI:    Uh, well it's not (unintelligible), it's just mentioned that you do not want any calls.

Hartman:    Ok, have a good day.

# Plaintiff's Exhibit

# "K"

## TRANSCRIPT OF 7/19/11 TELEPHONE CALL BETWEEN
## AHMSI AND RICHARD H. HARTMAN

AHMSI:      This is [unintelligible] from American Home Mortgage Servicing

Hartman:    All right, this is Richard.  What can I do for you?

AHMSI:      I'm talking to Mr. Richard Hartman, right?

Hartman:    Yes.

AHMSI:      Ok Mr. Hartman, let me inform you that American Home Mortgage
            Servicing is a debt collector, and may record and/or monitor calls.

Hartman:    Ok, I'm going to record this call also.

AHMSI:      Sure.  Thank you... uh... for letting me know.  So, do you have any other
            phone number that you would like to update with us.

Hartman:    No.

AHMSI:      All right, so...

Hartman:    Although, I also...  Also, you do not have consent to call me on this
            number, I have told a bunch of people this already.

AHMSI:      Ok, I'll have to check that...

Hartman:    Um.. and, I have a question... I have a question for you.  When you called
            me and I picked up the phone, there was a delay for a few seconds.  Did
            you dial me directly, or did you dial me using an automated dialing
            machine?

AHMSI:      Using an automated dialing machine.

Hartman:    You used an auto-dialer, that's why there was a dely?

AHMSI:      Yes.

Hartman:    Okay.  Every time you guys call me, is it with an auto-dialer?

AHMSI:      Yes.

Hartman:    Okay.  I see.

(I stopped recording the call at that point).

# Plaintiff's Exhibit

# "L"

### TRANSCRIPT OF 8/9/11 TELEPHONE CALL BETWEEN
### AHMSI AND RICHARD H. HARTMAN

Hartman:    Okay, this is Richard.

AHMSI:      Mr. Hartman?  I'm talking to Richard Hartman, right?

Hartman:    Yes.

AHMSI:      Ok, Mr. Hartman, I'm calling you from American Home Mortgage
            Servicing, My name is [untelligible], we are a debt collector and may
            record and/or monitor calls.

Hartman:    Okay, I'm going to record this call also.

AHMSI:      Ok, that's fine.  Mr. Hartman, I'm calling because your mortgage, which
            is in foreclosure, and the current estimated reinstatement amount is
            $16,000 until the end of today.  What are your intentions on this property?

Hartman:    When you called me, did you call me, did you dial this number directly, or
            did you call me from an automated dialing system?

AHMSI:      It is an automated call sir.

Hartman:    And you are aware that you're calling my cell phone, right?

AHMSI:      Yeah, that's correct.

Hartman:    Okay.

(I stopped recording the call at that time).

# Plaintiff's Exhibit

# "M"

### TRANSCRIPT OF 8/18/2011 TELEPHONE CALL BETWEEN
### AHMSI AND RICHARD H. HARTMAN

| | |
|---|---|
| Hartman: | Can you hear me? |
| AHMSI: | I can hear you sir. |
| Hartman: | Yeah, I'm sorry. I'm outside and I couldn't hear a word you said. What was it you said? |
| AHMSI: | [Unintelligible] |
| Hartman: | I'm sorry? |
| AHMSI: | Is there any alternate telephone number that you want to leave for yourself on the account? |
| Hartman: | No, this is the only phone number that I have, but I've told you guys numerous times that I don't want you calling it, and by the way, I'm recording this call. |
| AHMSI: | Ok Mr. Hartman, I'm calling you in regards to your account with us… [unintelligible] foreclosure, you have two accounts with us, the first one, you have an estimated reinstatement amount of $16,000 that's due today. So let me know what are your intentions towards this property? |
| Hartman: | Um, I have a question for you before we go any further. Ok, when you called me, did you dial directly, or did you call me on an automated dialing machine? |
| AHMSI: | I called you on an automatic dialer, sir. |
| Hartman: | Ok. And you do have noted in there that this is my cell phone and I haven't given you consent to call me on this number, right? |
| AHMSI: | Uh, let me check that sir. So you are saying that this telephone number that I am dialing, 813-486-8287, you do not want to be contacted at this number? |
| Hartman: | Correct. And if you read the notes, I've told probably 50 other representatives the same thing, and some of them have acknowledged to me that it is in the notes, so can you check the notes for me? |
| AHMSI: | Sure, I can do that for you. Also sir, have you sent a written request [untelligible]? |

Hartman:      Yes.

AHMSI:        Ok, can you just tell me when was the last time you sent it?

Hartman:      Well, I've only sent one, and I believe it was in October of last year.

AHMSI:        October of last year. (pause) I don't have the letter, but I can see on the notes Mr. Hartman that you have requested not to be contacted at this number.

Hartman:      Ok, you do see that.  And I'm sorry, this is American Home Mortgage Servicing, Inc, right?

AHMSI:        That is correct sir.

(I stopped recording the call at that point).

# Plaintiff's Exhibit

# "N"

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RICHARD H. HARTMAN II,

        Plaintiff,                CASE NO. 8:11-cv-02030-RAL-AEP

v.

AMERICAN HOME MORTGAGE
SERVICING, INC.,

        Defendant.

_____

**DEFENDANT'S ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Defendant, AMERICAN HOME MORTGAGE SERVICING, INC., ("AHMSI"), by and through its undersigned attorneys, pursuant to Rule 33, Federal Rules of Civil Procedure, hereby serves its answers to the first set of interrogatories served of Plaintiff, RICHARD H. HARTMAN II.

**Interrogatory No. 1**

List each and every telephone call placed by American Home Mortgage Servicing, Inc. or its representatives to telephone number 813-486-8287 for the period of time beginning October 1, 2010 and ending as of the date these interrogatories are responded to. Include the date and time each call was placed, whether the call was answered or not, the duration of the call and the physical location from which the telephone call originated.

**ANSWER:**  AHMSI objects to providing information regarding (1) whether the call was answered or not, (2) the duration of the call, and (3) the physical location from which the telephone call originated, on the grounds that the requested information is not likely to lead to the discovery of admissible evidence.  Subject to, and without waiving said objections, AHMSI responds as follows: see attached spreadsheet.

1

### Interrogatory No. 2

With regards to Interrogatory No. 1, if any such call was directly dialed by a human being, rather than placed using an automated telephone dialing system, provide the full legal name, the residential home address, the business address, and direct telephone number for each individual who directly dialed telephone number 813-486-8287, as well as the time, date and duration of each such telephone call.

**ANSWER:**   Not applicable.

2

STATE OF ~~Florida~~

COUNTY OF __Duval__

BEFORE ME, the undersigned authority personally appeared *Susan Magaddino* who was sworn to tell the truth and under penalty of perjury states:

Under penalty of perjury the answers to each of the above questions is true and correct.



*Antoinette Lyn Overfield*

The foregoing was acknowledged before me the *21st of October,* 2011 by *Susan Magaddino* who is personally known to me or ~~she~~ has produced identification type of identification produced. *FL DL*

*Antoinette Lyn Overfield*
NOTARY PUBLIC

**CERTIFICATE OF SERVICE**

131093.01241/50405292v.1

WE HEREBY CERTIFY that on this 21st day of October, 2011, we electronically served

the foregoing document on Plaintiff, Richard H. Hartman, 12528 Shadow Ridge Blvd., Hudson,

FL 34669, rick68fl@yahoo.com.

BLANK ROME, LLP

*Attorneys for Defendant*
1200 N. Federal Highway, Ste., 312
Boca Raton, FL 33432
Telephone: 561-417-8100
Facsimile: 561-417-8101

*s/ Manuel S. Hiraldo*
JOSEPH F. POKLEMBA
Florida Bar No.: 059803
JPoklemba@BlankRome.com
MANUEL S. HIRALDO
Florida Bar No.: 030380
MHiraldo@BlankRome.com

4

| Date | Time |
|------|------|
| 10/07/2010 | |
| | 12:54:49 PM |
| 10/08/2010 | |
| | 01:13:38 PM |
| 10/11/2010 | |
| | 02:12:00 PM |
| 10/12/2010 | |
| | 02:12:17 PM |
| 10/13/2010 | |
| | 02:12:40 PM |
| 10/15/2010 | |
| | 11:34:50 AM |
| | 03:40:35 PM |
| 10/18/2010 | |
| | 12:52:57 PM |
| | 02:16:10 PM |
| 10/19/2010 | |
| | 02:20:23 PM |
| 10/20/2010 | |
| | 02:14:51 PM |
| 10/21/2010 | |
| | 02:14:16 PM |
| 10/22/2010 | |
| | 02:16:10 PM |
| 10/25/2010 | |
| | 02:12:41 PM |
| 10/26/2010 | |
| | 02:12:17 PM |
| 10/27/2010 | |
| | 02:32:16 PM |
| 10/28/2010 | |
| | 02:35:01 PM |
| 10/29/2010 | |
| | 01:33:20 PM |
| 11/02/2010 | |
| | 02:37:40 PM |
| 11/03/2010 | |
| | 01:38:27 PM |
| 11/04/2010 | |
| | 02:33:12 PM |
| 11/09/2010 | |
| | 02:35:52 PM |
| 11/10/2010 | |
| | 02:32:17 PM |
| | 03:31:55 PM |
| 11/16/2010 | |

| | |
|---|---|
| | 01:54:46 PM |
| 11/17/2010 | |
| | 01:38:16 PM |
| 11/18/2010 | |
| | 02:39:14 PM |
| 11/19/2010 | |
| | 02:38:27 PM |
| 11/23/2010 | |
| | 02:38:11 PM |
| 12/01/2010 | |
| | 11:48:03 AM |
| | 03:14:54 PM |
| 12/02/2010 | |
| | 11:50:48 AM |
| 12/03/2010 | |
| | 11:19:10 AM |
| | 02:30:41 PM |
| 12/06/2010 | |
| | 11:15:05 AM |
| | 01:49:24 PM |
| | 03:19:17 PM |
| 12/07/2010 | |
| | 07:23:32 AM |
| | 12:25:27 PM |
| | 02:25:18 PM |
| 12/13/2010 | |
| | 08:37:04 AM |
| | 12:15:18 PM |
| 12/14/2010 | |
| | 11:10:09 AM |
| 12/15/2010 | |
| | 10:31:21 AM |
| 12/16/2010 | |
| | 07:58:07 AM |
| 12/22/2010 | |
| | 08:00:29 AM |
| | 10:50:02 AM |
| | 12:23:56 PM |
| | 01:22:59 PM |
| | 02:14:10 PM |
| | 03:06:31 PM |
| | 04:31:48 PM |
| 12/27/2010 | |
| | 07:58:41 AM |
| | 11:29:26 AM |
| | 12:44:58 PM |
| | 01:31:38 PM |

| | |
|---|---|
| | 02:25:54 PM |
| | 03:20:28 PM |
| 12/29/2010 | |
| | 07:58:46 AM |
| | 10:42:18 AM |
| | 11:58:00 AM |
| | 12:57:13 PM |
| | 01:12:39 PM |
| | 02:04:34 PM |
| | 03:01:15 PM |
| | 04:46:06 PM |
| 12/30/2010 | |
| | 09:35:27 AM |
| | 11:55:05 AM |
| | 12:45:14 PM |
| | 01:23:30 PM |
| | 02:12:17 PM |
| | 03:00:57 PM |
| | 04:59:58 PM |
| 12/31/2010 | |
| | 09:26:38 AM |
| | 11:27:52 AM |
| | 12:37:27 PM |
| | 01:22:07 PM |
| | 02:06:15 PM |
| | 03:01:12 PM |
| | 04:46:43 PM |
| 01/04/2011 | |
| | 01:52:45 PM |
| 01/05/2011 | |
| | 11:49:20 AM |
| | 03:21:04 PM |
| 01/06/2011 | |
| | 10:47:16 AM |
| | 01:29:59 PM |
| | 02:55:28 PM |
| | 03:49:08 PM |
| 01/12/2011 | |
| | 11:12:17 AM |
| | 01:46:19 PM |
| 01/13/2011 | |
| | 11:30:52 AM |
| | 02:22:39 PM |
| | 03:41:04 PM |
| 01/14/2011 | |
| | 12:43:28 PM |
| 01/17/2011 | |

| | |
|---|---|
| | 12:29:06 PM |
| 01/18/2011 | |
| | 10:30:51 AM |
| | 01:16:45 PM |
| | 02:39:57 PM |
| | 03:38:13 PM |
| 01/19/2011 | |
| | 09:54:03 AM |
| | 12:35:19 PM |
| | 01:42:20 PM |
| | 02:42:00 PM |
| | 03:37:46 PM |
| 01/20/2011 | |
| | 07:45:08 AM |
| | 12:24:27 PM |
| | 01:51:08 PM |
| | 02:32:13 PM |
| | 03:33:53 PM |
| 01/21/2011 | |
| | 07:55:23 AM |
| 02/17/2011 | |
| | 08:14:46 AM |
| 02/22/2011 | |
| | 03:29:08 PM |
| 03/02/2011 | |
| | 03:23:52 PM |
| 03/04/2011 | |
| | 12:51:07 PM |
| 03/08/2011 | |
| | 01:18:52 PM |
| 03/11/2011 | |
| | 12:21:24 PM |
| 03/14/2011 | |
| | 12:48:36 PM |
| 03/17/2011 | |
| | 12:34:44 PM |
| 03/22/2011 | |
| | 02:26:31 PM |
| 03/30/2011 | |
| | 12:29:18 PM |
| 04/06/2011 | |
| | 12:29:26 PM |
| 04/13/2011 | |
| | 11:42:31 AM |
| 04/20/2011 | |
| | 03:49:07 PM |
| | 10:46:11 AM |

| | |
|---|---|
| | 03:42:58 PM |
| 04/27/2011 | |
| | 10:40:26 AM |
| | 02:58:18 PM |
| 05/03/2011 | |
| | 11:16:07 AM |
| 05/06/2011 | |
| | 12:13:03 PM |
| 05/11/2011 | |
| | 10:53:29 AM |
| | 12:55:23 PM |
| 05/13/2011 | |
| | 07:50:09 AM |
| | 03:56:43 PM |
| 05/16/2011 | |
| | 12:00:09 PM |
| 05/19/2011 | |
| | 07:54:38 AM |
| | 01:24:17 PM |
| | 03:53:10 PM |
| 05/24/2011 | |
| | 08:00:15 AM |
| | 11:20:16 AM |
| 05/27/2011 | |
| | 10:26:20 AM |
| 05/31/2011 | |
| | 01:57:39 PM |
| 06/03/2011 | |
| | 12:16:32 PM |
| 06/07/2011 | |
| | 12:21:42 PM |
| 06/10/2011 | |
| | 11:14:22 AM |
| 06/14/2011 | |
| | 10:42:05 AM |
| 06/17/2011 | |
| | 11:44:21 AM |
| 06/21/2011 | |
| | 11:37:06 AM |
| 06/24/2011 | |
| | 10:36:51 AM |
| | 03:57:28 PM |
| 06/28/2011 | |
| | 09:59:16 AM |
| | 03:49:05 PM |
| 07/01/2011 | |
| | 11:10:31 AM |

| | |
|---|---|
| 07/05/2011 | |
| | 12:25:04 PM |
| 07/08/2011 | |
| | 12:16:12 PM |
| 07/12/2011 | |
| | 12:55:17 PM |
| 07/15/2011 | |
| | 01:36:58 PM |
| 07/19/2011 | |
| | 11:57:44 AM |
| 07/22/2011 | |
| | 01:41:54 PM |
| 07/26/2011 | |
| | 01:36:21 PM |
| 08/03/2011 | |
| | 03:07:16 PM |
| 08/09/2011 | |
| | 11:47:40 AM |
| 08/12/2011 | |
| | 01:55:56 PM |
| 08/18/2011 | |
| | 12:43:01 PM |
| 08/24/2011 | |
| | 11:55:44 AM |
| | 02:14:58 PM |